UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ELIZABETH M. HAMM,

                            Plaintiff,

                                                          DECISION AND ORDER

                                                          04-CV-6499L

              v.

UNITED STATES OF AMERICA,

                            Defendant.
_____


        On the morning of November 28, 2001, U.S. Army Reserve Specialist [SPC] Jonathan

Goodwin ("Goodwin") was traveling southbound on Route 14A in Yates County, from his home in

Rochester, New York to the Army Reserve Depot in Penn Yan, New York.  Goodwin was on his

way to the second day of a two-day training session, which was scheduled to begin at 8:00 a.m. on

that day.  At 8:55 a.m., Goodwin drove into the oncoming northbound lane in an attempt to pass a

slower moving vehicle.  There was a thick fog that reduced visibility, and Goodwin struck the

vehicle driven by Elizabeth Hamm, n/k/a Elizabeth Curtiss ("Hamm")  head-on.  Hamm sustained

severe injuries in the accident.  There is no real dispute that Goodwin's actions caused the accident.

Goodwin pleaded guilty to reckless driving and assault in the third degree in Yates County Court on

July 30, 2002. (Dkt. #21, Ex. 7, Transcript of Plea).

Hamm commenced this federal court action against the United States under the Federal Tort Claims Act ("FTCA") for injuries she sustained as a result of Goodwin's negligent driving.[1]  Pending before the Court is the Government's motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction.  The Government claims that Goodwin was not acting within the scope of his employment at the time of the accident.

## FACTS

Goodwin was a civilian and was also a United States Army Reservist.  As a reservist, he had certain duties.  One was to attend training sessions.  On November 27 and 28, 2001, he was scheduled to attend an inactive-duty training.  His schedule had been arranged as a makeup for a training session that Goodwin had failed to attend in October.  Goodwin completed the first day of the session and was returning for the second day when the accident occurred.  Goodwin had returned to his home in Rochester (about 60 miles away) for the night between training sessions.  He was scheduled to arrive for the second day at 8:00 a.m., November 28.  The accident occurred at about 8:55 a.m.  At the time of the accident, Goodwin was dressed in his military uniform.

After the accident, he was taken to the hospital and never actually reported to the Reserve Depot.  One of his supervising officers, after visiting him in the hospital, marked Goodwin "present" on his attendance sheet, Army Form 1380, Record of Individual Performance on Reserve Duty

---

[1]At oral argument, plaintiff advised that she had sued Goodwin in his individual capacity in New York State Court.  That action is pending.

Training.  He was, therefore, apparently paid for 8 hours of training on that day.  He was not reimbursed for any travel expenses.

Goodwin's medical expenses were covered and paid for by his personal automobile insurance. Goodwin has not faced military discipline for his absence or reckless driving on November 28, 2001.  The Army has not conducted a line-of-duty inquiry to question Goodwin's "pay status" of November 27 and 28, 2001.

## DISCUSSION

### A. Standards for a 12(b)(1) motion

It is well-settled that "[a] case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  There is also no dispute that "[j]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

When "resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002). The consideration of materials outside the pleadings does not convert the motion into one for summary judgment. *See CCS Int'l Ltd. v. United States,* 2003 U.S. Dist. LEXIS 23056 at *2 (S.D.N.Y. 2003).

The Second Circuit recognizes that where the issue of subject matter jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits, the court should use the standard applicable to a motion for summary judgment and dismiss for lack of jurisdiction only where no triable issues of fact exist. *London v. Polishook*, 189 F.3d 196, 198-99 (2d Cir. 1999) (quoting *Careau Group v. United Farm Workers of Am., AFL-CIO*, 940 F.2d 1291, 1293 (9th Cir. 1991)); *see also Makarova v. United States*, 1999 U.S. Dist. LEXIS 1211 (S.D.N.Y. Feb. 4, 1999), *aff'd* 201 F.3d 110 (2d Cir. 2000); *Augustine v. United States*, 704 F.2d 1074, 1079 (9th Cir. 1983) ("Because the jurisdictional issue is dependent upon the resolution of factual issues going to the merits, it was incumbent upon the district court to apply summary judgment standards in deciding whether to grant or deny the government's motion."). This doctrine is applicable when a motion for summary judgment is raised before adequate discovery has been completed, and when conflicts of fact exist.[2]

In this case, discovery on the issue of scope of employment has been completed, and the parties agreed at oral argument that the jurisdictional issue is ripe for decision. Accordingly, the Court has decided this issue on the present motion, despite the fact that jurisdiction and the merits are clearly intertwined.

## B. The FTCA and New York *respondeat superior* law

The FTCA, at 28 U.S.C. § 1346(b),  constitutes a waiver of the Government's sovereign immunity under certain circumstances, including for:

---

[2]In *London v. Polishook*, the district court had dismissed the claim for lack of subject matter jurisdiction one day after the complaint was filed. *London,* 189 F.3d at 198. (2d  Cir. 1999).  In *Augustine* "The moving papers... establish[ed] a clear conflict as to the central factual issues in the case." *Augustine,* 704 F.2d at 1079 (9th Cir. 1983).

> [C]laims against the United States, for money damages, ... for ... personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

To meet the burden of proving that her claim falls within the scope of that waiver, plaintiff must prove that, according to New York state law, Goodwin's actions on November 28, 2001, while driving south on Route 14A, were within the scope of his employment.[3] *Thompson*, 15 F.3d at 249 (2d Cir. 1994).  In my view, plaintiff has failed to meet that burden.  Under New York law, I do not believe that Goodwin was acting within the scope of his employment.

The dispute is whether Goodwin's driving was within the scope of his employment according to New York state *respondeat superior* law.  *Lundberg v. State,* 25 N.Y.2d 467, 470  (N.Y. 1969) set a two-part standard for employer liability in New York:

> The employee acts in the scope of his employment when he is doing something in furtherance of the duties he owes to his employer and where the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities.

In *Lundberg*, the claimant's husband was killed in a car accident caused by the negligent actions of a state employee who was driving in his private car to his work site after a weekend with his family.  The Court of Appeals held that the driver was not acting in the scope of his employment because: (1) the driver was not driving in furtherance of his employment, but instead, to satisfy his personal desire to visit his home in Buffalo and (2) the State did not have the power to control the

---

[3] The other elements of the FTCA are not contested: As a U.S. Army Reservist, Goodwin was an employee of the federal government. 28 U.S.C. § 2671.

driver's actions between the end of his work assignment Friday and the beginning of his assignment Monday. *Lundberg,* 25 N.Y.2d at 472 (N.Y. 1969).

The principal dispute between the parties is the second part of the *Lundberg* test, that is, whether the Government had the power to control Goodwin's actions during his trip from Rochester to Penn Yan. The Government contends that this case is no different from *Lundberg* and numerous other cases holding that commuting to and from work is generally not within the scope of employment, principally because the element of control is lacking. *Cunningham v. Petrilla,* 2006 NY Slip Op 4549, 1 (N.Y. App. Div. 2006); *D'Amico v. Christie,* 71 N.Y.2d 76 (N.Y. 1987); *Correa v. Baptiste,* 303 A.D. 2d 355 (N.Y App. Div. 2003). The Government contends here that the Army had no right to exercise control over Goodwin while he was at home between the training sessions or during his commute from home to the sessions.

Plaintiff contends, on the other hand, that because Goodwin was in the military, the case should be treated differently than the normal cases involving commuters. Plaintiff contends that Goodwin, as a reservist, was subject to more control than a civilian would be.

I am not persuaded by this argument. I find that there is no significant distinction between the level of control that the Army has over a reservist driving to a training exercise in the morning and the level of control that a private employer has over an employee driving to work.

The plaintiff argues that Goodwin was subject to greater control than an employee of a private employer because (1) Goodwin could potentially be disciplined under the Uniform Code of Military Justice ("UCMJ") for "Failure to Repair" or "Reckless Operation of a Vehicle," (2) Goodwin had already incurred five unexcused absences toward a yearly limit of nine, and (3) he was

- 6 -

in pay status at the time of the accident and the Army has not attempted to retroactively change that status.

This Court finds that potential discipline under the UCMJ does not indicate "control" sufficient to determine that a reservist acts within the "scope of employment." The Eighth Circuit dealt with this issue in *Bissell v. McElligott*, 369 F.2d 115, 117-19 (8th Cir. 1966):

> [A] soldier on leave driving an automobile purely for his own enjoyment would not be brought within the [FTCA] by reason of the Code of Military Justice provisions ... . The unique control which the Government maintains over a soldier has little if any bearing upon determining whether his activity is within the scope of his employment.

*See also, Hartzell v. United States*, 786 F.2d 964, 969 (9th Cir. 1986); *Hinson v. United States*, 257 F.2d 178, 181 (5th Cir. 1958); *United States v. Eleazer*, 177 F.2d 914, 918 (4th Cir. 1949).

Plaintiff argues that the Army's control over Goodwin is implicated by a policy subjecting a reservist to discharge or transfer after nine unexcused absences. I do not find this exposure to a potential sanction unique to the military. Commuters in any of the aforementioned "commuter" cases all drove with the intention to get to work, either for their employer's benefit or to personally keep their job. In those cases, the employee's desire to report to work and avoid discipline did not constitute evidence of an employer's right to control and did not extend the scope of employment to the act of commuting. This tragic accident is no different from hundreds that happen everyday involving workers in their commute to a place of employment. There are, of course, thousands of reservists and other military personnel living off base who commute. In my view, the Federal Tort Claims Act does not cover injuries occasioned by the negligent operation of private automobiles on the way to their "employment" at the base or other military facility.

Plaintiff contends that Goodwin's pay status at the time of the accident is relevant in determining the nature of the Army's control.  As mentioned, there is no evidence that Goodwin ever actually appeared for training on November 28, since he was in the hospital; his supervisor, not Goodwin, was the person who marked him "present," although the reasons for that notation are unclear.  Whether Goodwin was paid for the day of the accident is not dispositive, however.  Simply because an employee is paid for the time when a negligent act occurs is not dispositive under New York *respondeat superior* law.  *Lundberg,* 25 N.Y.2d at 472 (N.Y. 1969) ( "To hold that by simply paying his travel expenses to his home the State opened itself to liability for any tortious act he might commit while traveling between Buffalo and the work site would be patently unfair and beyond the scope of the doctrine of *respondeat superior*." ).

Plaintiff also argues that because Goodwin's Record of Individual Performance indicates that he was  paid on November 28 (even though no one has offered any proof that plaintiff ever actually reported to the base that day) he is presumed to have acted in the line of duty.[4]  Further, plaintiff contends that a line-of-duty determination is tantamount to a scope-of-employment determination.  First of all, there has been no line-of-duty inquiry here.  In any event, the authority is clear that the Army's determination that certain conduct is in the line of duty does not bind the Court and does not constitute a determination that the employee acted within the scope of employment under New York law.

_____

[4]Plaintiff points to Army Regulation 600-8-4 ¶2-6 "An injury... is presumed to be in [the line of duty] unless refuted by substantial evidence contained in the investigation."  However, the Government points to paragraph 2-1 of the same regulation: "a person who becomes a casualty because of his... willful negligence can never be said to be injured... in [the line of duty]."

The FTCA, at 28 U.S.C. § 2671, states that, for purposes of determining whether the Government has waived its sovereign immunity under 28 U.S.C. § 1346(b)(1), a member of the U.S. military force acts "within the scope of his office or employment" when he "act[s] in line of duty." However, courts have read that to invoke the local doctrine of *respondeat superior,* not to supercede it. *See Taber v. Maine*, 67 F.3d 1029, 1033 (2d Cir. 1995). The Code of Federal Regulations, under provisions pertaining to the Department of the Army, contains a section (referring to the administrative settlement of claims under the FTCA) that enunciates a connection between the "line-of-duty" determination and "scope of employment" but again, defers to state law of *respondeat superior*: 32 C.F.R. § 536.50(e) ("'Scope of employment' means acting in 'line of [military] duty' (28 U.S.C. 2671) and is determined in accordance with principles of *respondeat superior* under the law of the jurisdiction in which the act or omission occurred.").

Plaintiff relies on two cases, *Pitt v. Matola,* 890 F.Supp. 89, 93 (W.D.N.Y. 1995) and *Blesy v. United States,* 443 F. Supp. 358, 361 (W.D.N.Y. 1978), to support her contention that Goodwin was acting within the scope of employment. I find those cases inapposite. In both cases, it appeared clear that the servicemen were acting in the line of duty and within the scope of employment. Both servicemen were on active duty and were clearly performing acts for the benefit of the military and under its control. In *Blesy,* an active duty serviceman was on "travel status" reporting for the first time to an Army base to which he had been transferred. In *Pitt,* the accident occurred on an Army base, while the military driver was taking a break to clean up from a physical training activity, but while he was still on duty for the rest of the day. A line-of-duty determination based on a false

timesheet that has not been investigated does not carry the dispositive weight that the line-of-duty determinations did in *Pitt* and *Blesy.*

I agree with the Government's position that line-of-duty determinations are internal administrative decisions regarding such things as the extension of enlistment, retirement, forfeiture of pay, and medical and dental benefits, and do not consider the same elements as those set forth in *Lundberg.*[5]  Therefore, because the "scope of employment" as used in the FTCA is determined by state law set forth in *Lundberg*, even if it is assumed or determined that Goodwin was acting in the line of duty at the time of the accident, the Court is not bound by that military determination.

### CONCLUSION

Defendant's motion to dismiss (Dkt. #17) is granted, and plaintiff's complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      July 27, 2006.

---

[5] The Government also points to 32 C.F.R. §536.50(f), which states "Line of duty determinations under AR 600-8-1 [benefits determination] are not determinative of scope of employment [questions under the FTCA]."